UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN N. CASTANEDA,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 10-13724

District Judge George Caram Steeh
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff Susan N. Castaneda brings this action under 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner that she was required to repay an overpayment of disability insurance benefits ("DIB") in the amount of $46,750.30. Before the Court is Plaintiff's Motion for Summary Judgment, filed May 26, 2011. *Dock. #9*. Defendant filed a cross motion for summary judgment on July 25, 2011. *Dock. #11*. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED, that the Commissioner's order regarding overpayment be REVERSED, and that the case be remanded under sentence four of 405(g) for an immediate reinstatement of the original claim with a retroactive award of benefits. I further recommend that Defendant's Motion for Summary Judgment be DENIED.

## FACTUAL AND PROCEDURAL HISTORY

On August 28, 1993, Plaintiff was found disabled as of December, 1990 (Tr. 39). The

-1-

finding was later amended to reflect that Plaintiff engaged in a "trial work period" between March, 1991 and November, 1991 (Tr. 143). As such, she received benefits beginning in December, 1991 (Tr. 143).

In a work activity report to the SSA dated September 16, 1995, Plaintiff acknowledged that she had been working for the previous three months on a full-time basis, but stated that due to her physical problems, she was uncertain how long she could continue (Tr. 74). On December 27, 1995, the SSA, noting wage earnings by Plaintiff, asked her to report work activity occurring between January, 1993 to the present (Tr. 49-50). Plaintiff reported working for "Macro-Pro," Taco Bell, and Equinox International ("Equinox") performing the jobs of a research clerk and an administrative assistant/copywriter[1] (Tr. 51).

A 1993 earnings statement by Micro-Pro showed that Plaintiff received between $877.34 and 1,204.59 per month from April to October, 1993 (Tr. 88). From October, 1994 through April, 1995 she earned between $168.94 and $401.65 working for Taco Bell (Tr. 87). She denied, in effect, that her various work stints constituted Substantial Gainful Activity ("SGA"), noting that her work activity was compromised by frequent absences and the need for assistance from coworkers (Tr. 52). She stated that she had recently been diagnosed with diabetes and in addition, continued to receive treatment for chronic fatigue syndrome (Tr. 53).

In July, 1996, remarks placed in Plaintiff's claim folder by the SSA state that as of April, 1993, her work appeared to be SGA (Tr. 108). The original Administrative Law Judge ("ALJ"), Morton J. Rubin referred the issue of whether Plaintiff had engaged in SGA since the onset of disability to SSA's district office for determination (Tr. 109). March 6,

---

[1]Plaintiff's work report is undated, but refers to being laid off from her most recent job on March 6, 1996 (Tr. 51).

1998, correspondence from SSA claims representative N. J. Peldyak states that because Plaintiff had recently moved to Michigan, her file had been transferred from Nevada to the Mt. Pleasant, Michigan SSA office (Tr. 112). Plaintiff was again asked to complete a work activity report "along with all available pay stubs" and a medical background report from March, 1997 to the present (Tr. 112). Peldyak informed Plaintiff that "it appears that [she] ha[d] completed [her] trial work period sometime in the past," warning that benefits could be "suspended or terminated" if Plaintiff failed to respond (Tr. 112). Plaintiff apparently complied with the additional request for earnings reports.

In August, 1998, Equinox International reported earnings for Plaintiff from June, 1995 to March, 1996 from a monthly low of $300.57 (December, 1995) to $1324.99 (August, 1995) (Tr. 124). September, 1998 case notations state that some of Plaintiff's former employers were either out of business, did not retain records, or did not respond to requests for earning reports (Tr. 117). Records received from the Internal Revenue Service ("IRS") records show only sporadic earnings in May, August, and December, 1997 (Tr. 119, 121). In November, 2001, Plaintiff again received a request for updated work history and medical reports (Tr. 132). On February 13, 2002, Plaintiff was informed by the SSA that her disability had ended as of June, 1995 due to SGA (Tr. 45-48, 144-145). On February 15, 2002, she filed a renewed claim for disability alleging disability as of March 6, 1996 (Tr. 213).

At this point in the chronology, the Commissioner's position on whether Plaintiff continued to experience disability becomes more difficult to follow.

On March 6, 2002, Plaintiff was again informed that her disability had ended as of June, 1995 (consistent with the February 13, 2002 correspondence) (Tr. 151-153). However, on May 24, 2002, she received correspondence stating that her disability was *continuing* (Tr.

154-157). Contrary to the May 24, 2002 statement, on October 12, 2002 Plaintiff was informed that her disability had ended in June, 1995, consistent with February and March, 2002 letters (Tr. 158-159). On December 18, 2002, she was informed that she owed $46,750.30 in overpayment (Tr. 160).

On May 22, 2003, Plaintiff made a request for an administrative hearing on the issue of continuing disability (Tr. 193). Her recently hired attorney noted that Plaintiff's original file had been lost (Tr. 170). On November 17, 2004, ALJ Patricia E. Hartman, also acknowledging that the original file had been lost, remanded the overpayment case to the field office on the basis that the Office of Hearing and Appeals was "limited in resources necessary to reconstruct claims with issues of overpayment" (Tr. 193). She noted further that the office was "unable to determine the date of the initial determination for [the] claim" (Tr. 193). The ALJ also noted that prior to requesting a hearing, Plaintiff had not asked for reconsideration of the original determination (Tr. 193). She acknowledged that on May 27, 2003, Plaintiff had requested a hearing on the disability application (Tr. 193). ALJ Hartman stated that the disability claim "is regarding a time period that is not related to [the] overpayment claim" (Tr. 193). The undersigned cannot discern whether the ALJ was referring to the original disability finding or the renewed February 15, 2002 application.[2]

On December 3, 2007, a hearing was held in Lansing, Michigan before ALJ Hartman (Tr. 239). ALJ Hartman indicated that she would be considering 1). The February 15, 2002 renewed application for benefits and, 2). whether "benefits were properly ceased" as a result of the alleged SGA (Tr. 244-245). Plaintiff, represented by attorney Timothy O'Rouke,

---

[2] If ALJ Hartman was indeed referring to the February 15, 2002 renewed application claiming disability as of March 6, 1996, she is incorrect that it is unrelated to the issue of overpayment. If Plaintiff in fact became disabled again on March 6, 1996, any payments received after that point would not constitute "overpayment."

-4-

testified (Tr. 247-275, 280-282) as did Vocational Expert Sandra Steele (Tr. 275-280).

On February 17, 2008 (10 days prior to her determination on the overpayment issue) ALJ Hartman issued an order of dismissal on the disability claim and remanded that case to the field office, citing the May 24, 2002 determination that Plaintiff's disability was continuing (Tr. 213). Again, the Court is unable to discern whether the ALJ was referring to the original claim or the renewed claim. However, on February 27, 2008, ALJ Hartman issued a decision on the issue of overpayment, making the following findings:

> 1. Plaintiff's period of disability ended as of June, 1995 and she had thus been overpaid in the amount of $46,750.30 between June, 1995 through September, 2002.
>
> 2. Plaintiff was "not without fault" in causing and accepting the overpayment.
>
> 3. Plaintiff would be required to repay the overpayment because recovery of the overpayment had not been waived by the SSA.

(Tr. 23). The ALJ did not address the issue of whether Plaintiff had experienced a "medical improvement" justifying the cessation of the original claim or the renewed application for benefits. On August 20, 2010, the Appeals Council denied review of the ALJ's decision (Tr. 4-6). Plaintiff filed suit in this Court on September 20, 2010.

### A. Plaintiff's Testimony

Prior to Plaintiff's testimony, the ALJ stated that it was her "understanding" that she would be deciding both the issue of the termination of the original benefits and Plaintiff's renewed application for disability commencing on March 6, 1996 (Tr. 244).

Plaintiff, 61 at the time of the hearing, testified that her income was limited to welfare from the state of Michigan and food stamps (Tr. 248). She stated that she held a valid driver's license and drove approximately once a week (Tr. 248). She reported that in college, she had majored in English and Anthropology, but had not received a degree (Tr. 249).

Plaintiff stated that she last worked in 1995 as an administrative assistant (Tr. 249).

She stated that she completed a total of seven month's work, but noted that her work time had been punctuated by weekly absences as a result of health problems (Tr. 249-250). She testified that before the 1993 disability finding, she worked 25-30 hours a week in a school cafeteria and as a caterer, noting that her work product was compromised by health problems (Tr. 250-252).

As to the renewed claim for disability, the ALJ and Plaintiff's attorney agreed that Plaintiff would be required to show disability before March, 2001 to obtain ongoing DIB benefits (Tr. 253). In response, Plaintiff testified that prior to the March, 2001 expiration of benefits, she experienced extreme muscle fatigue, headaches, backaches, and poorly controlled insulin-dependent diabetes (Tr. 253). She stated that she was originally diagnosed with neuromuscular problems in 1985 (Tr. 254). She estimated that the condition caused level "8" pain on a scale of 1 to 10 (Tr. 255). She stated that she was unable to walk more than five minutes, or sit for more than 30 (Tr. 256). She testified that she was unable to lift more than 15 pounds, squat, stoop, or climb stairs (Tr. 257). She stated further that she experienced difficulty dressing herself (Tr. 263). She denied doing household or yard chores other than laundry (Tr. 263). As to mental problems, Plaintiff alleged that as a result of fibromyalgia, she experienced "fibro fog" on a regular basis, impairing her ability to think clearly (Tr. 257). In addition, she stated that she had been diagnosed with a bipolar disorder (Tr. 258).

Plaintiff testified that in the period before the expiration of benefits, she spent her time reading self-help books and watching television (Tr. 259-260). She admitted that she continued to visit with friends and family on a regular basis, ate out twice a week, and went to church (Tr. 260-262, 264). She denied anxiety, breathing, or hearing problems (Tr. 261). She acknowledged that she had continued to pursue the hobby of photography on a limited

basis and had once gone camping at a beach with some friends (Tr. 262).

Plaintiff testified, in effect, that the 1995-1996 work for Equinox was "accommodated" work, noting that contrary to company policy, she was allowed to write copy at home on certain days and often needed to leave work before the end of the business day (Tr. 265). She admitted that she drove herself to work, adding that the office was a six-minute drive from her house (Tr. 266). She opined that she was able to remain employed at Equinox because her direct supervisor "really stuck up for [her]" (Tr. 266). She noted that the same supervisor gave her high work evaluations and attempted to raise her pay, despite her sporadic work attendance (Tr. 274-275). She characterized her March, 2006 work termination by Equinox as a "mutual decision" (Tr. 266). She alleged that she worked no longer than eight hours a week in an earlier job with Macro Pro (266-267).

Plaintiff testified that before the March, 2001 date last insured, she was diagnosed with breast cancer, underwent a shoulder replacement, and experienced the aforementioned conditions of diabetes, a bipolar disorder, headaches, and chronic fatigue syndrome (Tr. 268-274). She alleged that while experiencing a bout of depression she would become immobilized (Tr. 273). Plaintiff ended her testimony by stating that when questioned about her work history during the disputed period, she was never informed by the SSA (through correspondence or the case manager assigned to the matter) that her earnings were considered SGA or that her benefits would be ending until being informed by letter in February, 2002 (Tr. 281).

**B. The VE's Testimony**

VE Sandra Steele classified Plaintiff's former work as a research assistant and copywriter as skilled at the sedentary exertional level; administrative assistant,

semiskilled/sedentary; and caterer, skilled/medium[3] (Tr. 276). The ALJ then posed the following question to the VE:

> If we assume an individual who's restricted to light work, would need to be able to sit or stand at will, should not climb any ladders, ropes, or scaffolds, should do no repetitive bending or stooping, should only occasionally climb ramps or stairs, should do only occasional reaching with the left upper extremity and only occasional pushing or pulling with the left upper extremity. Could such a person do any of the claimant's past relevant work?

(Tr. 277). The VE replied that given the hypothetical restrictions, Plaintiff could perform the former work of research assistant, copywriter, and administrative assistant (Tr. 278). The VE testified further that if Plaintiff's testimony were fully credited, she would be unable to perform any work due to frequent absences and the need for rest periodically (Tr. 273).

### C. The ALJ's Decision

ALJ Hartman found that Plaintiff was overpaid $46,750.30 for the period between June, 1995 and September, 2002 (Tr. 23). Citing 20 C.F.R. 404.1524, the ALJ noted that the minimum monthly amount to show SGA for 1990 through 1999 was $500 (Tr. 19-20). She found that Plaintiff's earnings for certain months following the May, 1995 "trial work period" exceeded the $500 cutoff (Tr. 22).

The ALJ found Plaintiff's testimony "not fully credible" (Tr. 22). She rejected allegations that the work performed was "accommodated," rather than SGA (Tr. 22). Citing Plaintiff's testimony regarding the employment at Equinox, the ALJ found that "the only

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

-8-

accommodation [Plaintiff] had was that she was able to work at home" (Tr. 22). Finally, the ALJ found that Plaintiff was "not without fault" in accepting the overpayment and thus, the amount owing was not waived (Tr. 22). She noted that Plaintiff had been informed on a yearly basis by the SSA of her responsibilities to report health improvements or SGA (Tr. 20). The ALJ did not reference Plaintiff's medical records.

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services,* 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services,* 884 F.2d 241, 245 (6th Cir. 1989).

## ANALYSIS

Plaintiff makes five arguments against affirming the Commissioner's decision. First, she contends that the Commissioner erred by terminating her benefits before determining

whether she had undergone a medical improvement. *Plaintiff's Brief* at 15-18; 20 CFR 404.1594(a). Citing *Kennedy v. Commissioner of Soc. Sec.,* 247 Fed. Appx. 761, 765, 2007 WL 2669153, *4 (6th Cir.2007), she notes that "'the ultimate burden of proof lies with the Commissioner in termination proceedings.'" *Plaintiff's Brief* at 15-18.  Second, Plaintiff contends that even if she were found to be engaging in SGA for a limited time, benefits ought to have been reinstated expeditiously because she was later shown incapable of SGA as a result of the same conditions creating the original disability. *Id.* at 18 (citing 20 C.F.R. 404.1594). Third, building on the argument that she is entitled to a expeditious reinstatement of benefits, Plaintiff again relies on the May 24, 2002 letter that disability benefits were continuing, to argue that the she has *not* experienced a medical improvement and is thus entitled to continuing benefits. *Id.* at 19-20.

Fourth, Plaintiff disputes the ALJ's finding that she was engaged in SGA after May, 1995. *Plaintiff's Brief* at 20-22. Specifically, she faults the ALJ for finding no evidence to support her claim that she was not involved in SGA. *Id.* Fifth and last, Plaintiff argues that she was "without fault" in causing the overpayment, noting that she willingly "supplied evidence of her work activity on numerous occasions." *Id.* at 22.

### A. Applicable Law

In contrast to the initial disability determination, "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy v. Astrue, supra,* 247 Fed.Appx. at 765, 2007 WL 2669153, *4  (citing *Griego v. Sullivan,* 940 F.2d 942, 944 (5th Cir.1991)). Aside from a finding that a period of disability has ended due to a "medical improvement," the Commissioner may terminate benefits upon determining that the claimant has engaged in SGA. 20 CFR § 404.1594(d)(5), (f)(1). SGA is defined as work that is both "substantial and gainful." 20 CFR § 404.1572. The fact that a claimant may be working

only part-time does not foreclose the possibility that the work is SGA. 20 CFR § 404.1572(a). Monthly earnings averaging more than $500 a month between January, 1990 and June, 1999 create a rebuttable presumption of SGA. § 404.1574(b)(2);*See also* SSR 83-33. However, regardless of whether the claimant's earnings exceed the monthly maximum, work performed under "special conditions" may not qualify as substantial gainful activity. 20 CFR § 404.1573(c); *see also Boyes v. Secretary of Health and Human Services,* 46 F.3d 510, 512 (6th Cir. 1994)("presumption that the work constituted substantial gainful activity . . . is destroyed" by establishing that the work was "accommodated."). Section 404.1573(c) contains a non-exhaustive list of work done under "special conditions" or "accommodated" work:

> [The individual] (1) received "special assistance from other employees in performing [his/her] work" (2) was permitted "to work irregular hours or take frequent rest periods"(3) was "provided with special equipment or [was] assigned work especially suited to [the] impairment (4) was able to work "only because of specially arranged circumstances . . ."; (5) "work[ed] at a lower standard of productivity or efficiency than other employees; or (6) "was given the opportunity to work despite . . . impairment[s] because of family relationship, past association with [the] employer, or [the] employer's concern for [his/her] welfare"

Upon a finding that the claimant has received overpayment, "[t]he Social Security Act mandates repayment of overpayments except where an individual 'is without fault' *and* 'such adjustment or recovery would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience.'" *Valley v. Commissioner of Social Security,* 427 F.3d 388, 391 (6th Cir. 2005)(*quoting* 42 U.S.C. § 404(b))(emphasis added).[4]

---

[4] "An individual who is without fault in receiving an overpayment may still be required to repay, provided such a requirement 'would [not] defeat the purpose of this [Act nor] would be against equity and good conscience.'"*Blackwell v. Secretary of Health and Human Services,* 1989 WL 13069, *2 (6th Cir. 1989)(*citing* 42 U.S.C. § 404(b)). "Repayment defeats the purpose of the Act when it 'deprive[s] a person of income required for ordinary and

### B. Substantial Evidence Does not Support the Finding that Plaintiff Engaged in SGA After May, 1995

Because the resolution of Plaintiff's fourth argument is also dispositive of arguments 1 and 5, it will be addressed first. Moreover, my finding that substantial evidence does not support the ALJ's determination, if adopted by the District Court, moots the issue of the renewed claim for benefits, addressed in Plaintiff's arguments 2 and 3.

Substantial evidence does not support the ALJ's finding that Plaintiff was engaged in SGA for the disputed period. The reasoning behind the ALJ's finding that Plaintiff's work was SGA, rather than "accommodated," is limited to the following:

> [Plaintiff testified that] she did not need assistance with her transportation. She stated that the only accommodation she had was that she was able to work at home. [Plaintiff] testified that she worked about 25 to 30 hours per week. She stated that her boss was very good to her and stuck up for her. [She] testified that the vice president and president did not like her working at home, but her boss allowed it. [She] testified that her boss permitted variability for her because he liked her work so much and even wanted to give her a raise.

(Tr. 22). In support of her conclusion that Plaintiff's work was not accommodated, the ALJ also cited the VE's testimony for the proposition that the "end product is the important thing so some variability is allowed" (Tr. 22).

This summation mis-characterizes a significant portion of Plaintiff's testimony. Plaintiff's actually testimony was that she did not require assistance with transportation to the Equinox job because it was only a six-minute drive from her home (Tr. 266). Contrary

---

necessary living expenses'") *Id.* Repayment is considered against equity and good conscience "'if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right ... or changed his or her position for the worse.'" *Valley,* 427 F.3d at 391 (*citing* 20 C.F.R. § 404.509). The plaintiff bears the burden of showing that repaying the overpayment would deprive him of ordinary and necessary living expenses. *Pliley v. Sullivan,* 892 F.2d 35, 39 (6th. 1989).

to the ALJ's finding that her only accommodation was that "she was able to work at home," Plaintiff testified that she was given several "accommodations." She testified that her medical condition often required her to leave the office in mid-afternoon and that she "missed a lot of work" (Tr. 265). Plaintiff characterized herself as an experienced copywriter, but that her work performance was "unreliable," (contrary to the ALJ's finding that she was able to produce a competent and timely "end product") (Tr. 22, 265). Plaintiff, noting that the Equinox stint was punctuated by sporadic attendance due to health problems, stated that she did not know why she was not terminated "long before" her March, 2006 termination (Tr. 265).

Further, Plaintiff's description of her work at Equinox, plainly interpreted, meets a number of the characteristics of "accommodated" work set forth in 20 CFR § 404.1573(c). Her testimony, if credited, shows that she was permitted "to work irregular hours or take frequent rest periods;" was able to work "only because of specially arranged circumstances;" "work[ed] at a lower standard of productivity or efficiency than other employees;" and "was given the opportunity to work as a result of her direct supervisor's "concern for [her] welfare." *see* 20 CFR § 404.1573(c)(2)(4-6), *supra*.

Although the ALJ found elsewhere that Plaintiff's testimony was not "fully credible," it is unclear what portion of the testimony was rejected (Tr. 21). The paragraph directly preceding this finding recounts portions of Plaintiff's testimony that do not support either a finding for or against the conclusion that SGA was performed.[5]

---

[5]

In any case, "it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible. SSR 96-7p, 1996 WL 362209, *34484. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id.* These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235,

The credibility determination suffers from more obvious deficiencies. Defendant responds to Plaintiff's first argument by pointing out that the ALJ, having found the presence of SGA, was thus not required to determine whether Plaintiff experienced a "medical improvement." 20 C.F.R. § 404.1594(d)(5), (f)(1), *supra.* However here, the veracity of Plaintiff's "accommodated" work position is inextricably intertwined with her medical condition.

For example, medical records for the months preceding June, 1995 would tend to show the severity of her conditions, thus bearing on her claims of concentrational problems, the need to leave work early, and sporadic attendance. Although the ALJ was not required to show "medical improvement" if substantial evidence supported the presence of SGA, it does not follow that the ALJ could make her "SGA" determination without review and discussion of the medical records. *See Jackson v. Barnhart,* 60 Fed.Appx. 255, 258-260, 2003 WL 1473554, *3 (10th Cir. 2003)(ALJ required to evaluate the medical transcript in determining whether the plaintiff performed SGA or "accommodated" work in termination of benefits case)(citing *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir.1996))("'[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing.'").

While as discussed below, the loss of the most of file by the SSA would prevent the ALJ from accessing the majority of Plaintiff's medical records created in 1995 and before, at least one medical provider appears to have stated that Plaintiff was incapable of "*any*

---

242 (6th Cir.2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir.2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994).

consistent gainful employment" as of May, 2006 (Tr. 196). Despite the fact that the medical records could presumably "make or break" Plaintiff's claim that she performed only accommodated work, the administrative decision is absent reference to *any* of these records. The error on this point is particularly critical, given that at the beginning of the hearing, the ALJ stated that she would be deciding both the overpayment issue *and* whether Plaintiff's medical condition justified ongoing benefits[6] (Tr. 244).

### C. Plaintiff is Entitled to the Immediate Reinstatement of the Original Disability Claim[7]

Having found that substantial evidence does not support the finding that Plaintiff engaged in SGA, the Court must now determine whether the case should be remanded for determination of 1). whether the ALJ should be allowed to better explain her reasons for finding the presence of SGA  2). whether alternate grounds exist for the cessation of benefits, *i. e.,* "medical improvement" or, 3). if the case should be remanded for the continuation of benefits on the original claim. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994), and *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir.1994), hold that

---

[6]

As to Plaintiff's argument 5, the ALJ's finding that Plaintiff was "not without fault" in the overpayment because she was aware that SGA would end her entitlement benefits founders on the erroneous finding that Plaintiff was engaged in SGA (Tr. 22). A finding that Plaintiff did *not* engage in SGA (and thus abided by the conditions of receiving benefits) would presumably direct a "not without fault" in creating the overpayment. As such, the ALJ would have been required to proceed to the second prong of the "repayment of overpayment" analysis to determine whether requiring repayment would be against "equity and good conscience." *Valley, supra,* 427 F.3d at 391 (*citing* 42 U.S.C. § 404(b)). Plaintiff's sources of income are now limited to welfare and food stamps (Tr. 248). A claimant can establish the entitlement to a waiver if she can show that repaying the overpayment would deprive her of ordinary and necessary living expenses. *Pliley, supra,* 892 F.2d at 39.

[7]The finding that Plaintiff is entitled to reinstatement of the original benefits claim moots her renewed application for benefits based on an onset date of March 6, 2006.

it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler,* 771 F.2d rectification, 973 (6th Cir.1985)).

I recommend that the case be remanded for the reinstatement of the original claim.[8] Having found that substantial evidence does not support the conclusion that Plaintiff engaged in SGA, a remand for further fact-finding would involve directing the ALJ to 1). support her findings with citations to the medical records or 2). discuss whether an improvement in Plaintiff's medical condition supports the cessation of benefits.

Given the facts of this case, neither of these alternatives is feasible. First, even assuming that upon remand, the ALJ were to cite the limited "reconstructed" medical file in support of her SGA finding, both the Commissioner and Plaintiff agree that the original file (including many of the original medical records) was lost by the SSA (Tr. 203). It appears that despite the best efforts of Plaintiff's attorney, only a few of the medical records could be obtained from the relevant period, since a number of Plaintiff's former treating sources were now retired and a number a records had been destroyed (Tr. 204). If nothing else, the

---

[8]At no point did Plaintiff waive the issue of whether her benefits ought to have been terminated. Although an SSA case worker asserted in September, 2005 that Plaintiff failed to request a hearing on the cessation of the original claim within 10 days of the February 13, 2002 notification (Tr. 207), the May 22, 2002 letter stating the that Plaintiff's benefits were continuing acknowledges, in effect, that Plaintiff timely disputed the cessation decision. Although she argues in the alternative that benefits ought to be granted on the new application, Plaintiff's position that her benefits were wrongfully terminated in the original claim has been preserved through the entire administrative process (Tr. 170-171, 195-196).

loss of the medical file would compromise Plaintiff's ability to show that she did not engage in SGA. Thus, she would be deprived of a "full and fair hearing."

For identical reasons, without sufficient medical files for the period in question, the Commissioner would be unable to show that Plaintiff experienced a "medical improvement" as of June, 1995. "If relevant parts of the prior record are not reconstructed either because it is determined not to attempt reconstruction or because such efforts fail, *medical improvement cannot be found.*" 20 CFR 404.1594(c)(3)(iv)(emphasis added). Moreover, it appears that the Commission's decision to stop Plaintiff's benefits was based solely on the theory that she was engaging in SGA. The transcript documents do not include any finding that the cessation of benefits was based on a "medical improvement."

Even assuming that sometime in the future, the Commission were able to recover the original file and show that the medical records support either a finding of SGA or medical improvement, a remand for a reinstatement of benefits is nonetheless required. It bears repeating that it was not until February, 2002–more than six years after initially requesting information regarding the SGA issue– that Plaintiff (now 65 and indigent) was informed that she was not entitled to benefits as of June, 1995. Plaintiff's testimony at the 2007 hearing is understandably punctuated with statements that she could not clearly remember the beginning and end dates of certain work stints or the onset of medical conditions occurring over ten years past. Now, four years later, the passage of even more time–none of it attributable to the Plaintiff– would severely prejudice her ability to defend her continued entitlement to benefits.

-17-

Plaintiff's ability to defend her position has been compromised by both the inordinate delays and the SSA's loss of her medical file for the disputed years. *See Donahue v. Massanari,* 166 F.Supp.2d 1143, 1150 -1151(E.D.Mich.2001) (a factor the Court can consider in deciding whether to remand for benefits is whether "the commissioner has already been provided an opportunity to correct an error and years have passed and there are still errors in the administrative record"); *Smith v. Califano*, 637 F.2d 968, 973, n. 1 (3rd Cir. 1981) ("Must an indigent claimant, who has already battled for seven years, wait with the patience of Job for yet another remand before he can collect the relatively modest amounts available through such an award? We think not."); *Davila on Behalf of Davila v. Shalala,* 848 F.Supp. 1141, 1144 (S.D.N.Y.1994) ("Where a government agency fails to act with all deliberate speed in performing its duties or correcting its own failure to maintain its own records, the private party should not be placed at a cruel disadvantage because of the resulting delay")[9].

Here, delay due to administrative errors; the lack of evidence to support the SGA findings or a medical improvement; and extreme prejudice to Plaintiff mandate the remand of this case for an immediate award of benefits. *Faucher,* 17 F.3d at 176

## CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED, that the Commissioner's order regarding overpayment be REVERSED, and that the case be remanded under sentence four of 405(g) for an immediate reinstatement of the

---

[9]Over five years ago on October 18, 2006, Plaintiff's attorney informed an SSA district manager that **"THIS CASE HAS BOUNDED AROUND FOR YEARS NOW, WITH MY CLIENT SUFFERING TREMENDOUSLY,"** describing the case as his most "frustrating" in his 25 years of Social Security practice (Tr. 210)(caps, boldface in original).

original claim with a retroactive award of benefits. I further recommend that Defendant's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

       R.  STEVEN WHALEN
       UNITED STATES MAGISTRATE JUDGE

Dated: December 7, 2011

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on December 7, 2011.

       s/Johnetta M. Curry-Williams
       Case Manager